UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MOUNIRA AL HMOUD

                          Plaintiff,

              v.

ALTICE USA, Inc., i24 US LLC, ROBERT S.
WHEELOCK, FRANK MELLOUL, and ERIN
BERRY.

                          Defendants.

Case No.: 20-CV-4806


**COMPLAINT**

**JURY TRIAL DEMANDED**


## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Mounira Al Hmoud, ("Plaintiff") by and through her attorneys, Danny Grace, P.C., as and for her Complaint in this action against the Altice USA, Inc. ("Altice USA"), i24 News, Robert S. Wheelock ("Wheelock"), Frank Melloul ("Melloul"), and Erin Berry ("Berry") (collectively "Defendants") alleges upon  personal knowledge and upon information and belief as to the matters as follows:

## NATURE OF THE CLAIMS

1.      This is an action for declaratory, injunctive, equitable relief, as well as monetary damages to redress Defendants' unlawful employment practices against Plaintiff, including improper classification in violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 203 ("FLSA"); and the New York Labor Laws, as well as discriminatory and retaliatory treatment of Plaintiff in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et. seq. ("Title VII"); the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981a et. seq. ("§ 1981"); The New York State Human Rights Law, New York Executive Law §§ 290 et. seq.

("NYSHRL"); and The New York City Human Rights Law, New York Administrative Code §§ 8-101 et. seq. ("NYCHRL").

2.      Defendants, its owners, managers, and employees intentionally, unlawfully, and recklessly misclassified Plaintiff as an independent contractor in order to avoid tax obligations, and payment of employee benefits under city, state, and federal laws in violation of the FLSA and NYLL.

3.      Defendants, its owners, managers, and employees intentionally, unlawfully and recklessly treated Plaintiff in a discriminatory manner based on her gender, race, national origin, and religion in violation of Title VII, NYSHRL and NYCHRL.

4.      After Plaintiff complained about such unlawful treatment and asserted her rights under Title VII, NYSHRL, and NYCHRL Defendants retaliated and terminated Plaintiff absent any other cause.

5.      Defendants, its owners, managers, and employees intentionally, unlawfully and recklessly treated Plaintiff in a discriminatory manner based on her race in violation of § 1981.

6.      Defendants' conduct was knowing, malicious, willful and wanton and showed a reckless disregard for Plaintiff, which has caused and continues to cause economical and non-economic damages, and severe mental anguish and distress.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's civil rights under the Fair Labor Standards Act of 1938, 29 U.S.C. § 203; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et. seq; and the Civil Rights Act of 1866, as amended, 42 U.S.C. §§ 1981a et. seq.

2

8.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. § 1367(a).

9.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper in the United States District Court, Eastern District of New York, pursuant to 28 U.S.C. §1391, because Defendants are headquartered in this district, and Defendants regularly transact business in the State of New York and the Eastern District of New York.

## PROCEDURAL REQUIREMENTS

11.     Prior to the commencement of this action, Plaintiff filed a verified charge to the Equal Employment Opportunity Commission ("EEOC") on May 1, 2020, charging Defendants with unlawful discrimination in relation to Plaintiff's employment and arising out of the same facts alleged herein.

12.     Plaintiff received a Right to Sue letter from the EEOC on or around July 13, 2020.

13.     This Complaint has been filed within 90 days of Plaintiff's receipt of Right to Sue letter.

14.     Contemporaneous with the commencement of this action, a copy of this Complaint was served on the New York City Commission on Human Rights and the Office of the Corporation Counsel of the City of New York, thereby satisfying the notice requirements of §§8-502 of the New York City Administrative Code.

15.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

16.     Plaintiff is a former employee of Defendants.

17.     Plaintiff was hired by Defendants on January 10, 2017, and remained employed full-time, working usually at least 50 hours every week, and in excess of 1,250 hours in twelve months, until her unlawful termination on October 27, 2019.

18.     At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

19.     Defendant Altice USA is a telecommunications company, incorporated in Delaware with current headquarters in Long Island City, New York.

20.     During the events described herein, upon information and belief Defendant Altice USA had its headquarters in Bethpage, New York.   In 2016, Defendant Altice purchased Cablevision for $10 billion dollars and is estimated to have 11,800 employees.

21.     Defendant i24 News is an English language international news television channel owned by Defendant Altice USA.  It is the American version of the Israeli news and television channel of the same name (the channel was always A/V in English, French and Arabic but not Hebrew).  Defendant i24 News has headquarters in Jaffa Port, Tel Aviv, Israel and Times Square, Manhattan, New York, as well as an additional bureau in Washington, D.C.  It is estimated to have 50 employees.

22.     Defendant Wheelock, upon information and belief, resides in the State of New York and maintains a place of business in Long Island City, New York within the jurisdiction of this Court.  Upon information and belief, at all relevant times Defendant Wheelock is and/or was the Vice President of Global Content of i24News, was in active control and management of the company, and regulated the employment of persons employed by the company, including Plaintiff. At all relevant times, Defendant Wheelock met the definition of "employer" under all applicable statutes.

4

23.     Defendant Melloul, upon information and belief, resides in the State of New York and maintains a place of business in Long Island City, New York within the jurisdiction of this Court. Upon information and belief, at all relevant times Defendant Melloul is and/or was the CEO of i24News, was in active control and management of the company, and regulated the employment of persons employed by the company, including Plaintiff.  At all relevant times, Defendant Melloul met the definition of "employer" under all applicable statutes.

24.     Defendant Berry, upon information and belief, resides in the State of New York and maintains a place of business in Long Island City, New York within the jurisdiction of this Court.  Upon information and belief, at all relevant times Defendant Berry is and/or was the Manager of Immigration and Relocation at Altice USA, was in active control and management of the company, regulates the employment of persons employed by the company, including Plaintiff. At all relevant times, Defendant Berry met the definition of "employer" under all applicant statutes.

25.     At all relevant times, Defendants were Plaintiff's direct employers.

26.     At all relevant times, Defendants met the definition of an "employer" under all applicable statutes.

**FACTUAL ALLEGATIONS**

27.     Plaintiff began her employment with Defendants on January 10, 2017.  Plaintiff was employed as a Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) and Correspondent for the Company's international news channel i24 News.

28.     Defendants hired Plaintiff due to her impressive academic credentials including a M.S. in Journalism from Boston University, and due to her experience as a television journalist and producer covering Washington, D.C. politics and her high-level Washington, D.C. contact base.

5

29.     Plaintiff's initial salary was $7,160.00 per month and she worked an average of 14-15 hours per day, including some weekends when needed given the time difference between the USA and Israel, as well as the Israeli workweek (Sunday-Thursday).

30.     During her employment, Plaintiff consistently met and exceeded all expectations set of her while supervising and managing six employees at the time, and her salary was raised to $9,167.00 per month in 2018.

31.     Defendants i24 News and Melloul also specifically hired Plaintiff due to her ability to speak all three languages that i24 News broadcasts in, specifically English, French, and Arabic.

32.     Plaintiff was the only U.S. based employee for Defendant i24 News who spoke all three languages.

33.     Being the only U.S. employee of Saudi Arabian national origin, Plaintiff was hired to serve as a "bridge" for Defendants between Israel and the Arab world, particularly in the Washington D.C. diplomatic apparatus.

34.     Defendants i24 News and Melloul made a point of asking Plaintiff to act as his representative at meetings with American Israel Public Affairs Committee ("AIPAC") officials (after she introduced him to them) and appointed Plaintiff as his point of contact at the State Department and the White House.

35.     Plaintiff was particularly effective in this role and created and maintained high-level contacts in the above-mentioned institutions throughout the diplomatic community and in the White House for Defendants.

36.     Defendants Altice USA and Melloul were aware of Plaintiff's extensive experience and contact network in Washington D.C. as she routinely made personal introductions for Melloul

and accompanied him to meetings in Washington while translating some passages in French for him.

**Violation of the FLSA and NYLL**

37.     Despite her work performance, as well as Defendants' utilization of Plaintiff's professional connections and access that her national origin provided, Defendants were reluctant to provide equal opportunities accordingly.

38.     Defendant Wheelock and other managers, such as Gustavo Serrano (then director of Defendant i24 News in New York) prevented Plaintiff from appearing on Defendants' network and minimized Plaintiff's image and name.

39.     Defendants benefitted from Plaintiff as an employee while unlawfully classifying Plaintiff as an independent contractor in order to avoid tax obligations and pass these obligations through Plaintiff herself.

40.     Defendants benefited from Plaintiff's non-immigrant status and expected her to continue to work in her capacity as Washington D.C. Editor-in-Chief (manager of the Washington Bureau) while pretending that she was not running the bureau.

41.     In a recorded phone meeting after Plaintiff signed her most recent 2019 employment contract, Human Resources ("HR") specifically directed her to continue to do her job but to pretend that she was not acting in a managerial role.

42.     In fact, Plaintiff unwittingly suffered significant economic damages as a result of her misclassification.

43.     Moreover, Plaintiff was deprived of any benefits associated with lawful employment such as health insurance, 401k retirement contributions, company social security payments, and other city, state, and federal benefits.

44.     During the entirety of her employment, Plaintiff was under the control and supervision of Defendants Wheelock and Melloul.

45.     The nature of Plaintiff's employment was indicative of her status as an employee as she was the manager of the Washington, D.C. bureau, as well as acted as a representative for Defendants with the Associated Press, AIPAC, White House and State Department officials.

46.     Defendants sent Plaintiff on assignments outside the United States, further indicative of her status as an employee.

47.     Plaintiff was required to adhere to the policies and practices of Defendants throughout the term of her employment and on all assignments.

48.     Further, the nature of the services that Plaintiff performed, and the manner in which she performed these services, made it clear that Plaintiff was actually an "employee" within the meaning of the FLSA and NYLL.

49.     Plaintiff economically relied on Defendants and her income from Defendants was her only economic resource since Defendants barred Plaintiff from working with any other news channel during her employment with them.

50.     Plaintiff was paid *vis-à-vis* invoice submissions that were for a set amount every month in 2017 and 2018, and then every two weeks in 2019.

51.     Plaintiff would send a separate invoice for work-related expenses incurred while managing the D.C. bureau, including bills related to her cell phone, cab rides to interviews, postage fees, office supplies, etc.

52.     For the entirety of her employment, Plaintiff made decisions and cultivated relationships for the sole purpose of benefitting and working on behalf of Defendants and their news distribution function.

53.     While Defendants misclassified Plaintiff as an independent contractor, Defendants retained the absolute right to control and direct the work of Plaintiff.

54.     Despite Plaintiff's service as a full-time employee of Defendants under all legal definitions, Defendants misclassified her as an independent contractor in violation of the FLSA and NYLL.

55.     This misclassification was designed to help Defendants avoid furnishing Plaintiff with employee benefits and paying employer taxes on her behalf.

56.     Defendants continued to knowingly misclassify Plaintiff as an independent contractor even after she reminded them of the risks in 2017, 2018 and 2019.

57.     Not only was Defendants' conduct unlawful, it has caused, and continues to cause, Plaintiff significant economic damage.

**Violations of Title VII, § 1981, NYSHRL and NYCHRL**

58.     Plaintiff was also subject to intentional discrimination and retaliation because of her gender, race, national origin, and religion.

59.     Defendants' deprived Plaintiff of significant career advancement opportunities, instead giving them to male, white, American, and Jewish colleagues with significantly less experience and qualifications.

60.     Defendants continually fostered a working environment preferable to white male and Jewish workers where they were assigned more supporting resources and projects, given more on-air opportunities, more chances to get promoted, and promoted on marketing materials to the public as well as on their website than others.

61.     Specifically, Plaintiff was discriminated against, often times very openly, for being the only Arab woman and manager working for Defendants, which hired majority Israeli and Jewish staff, as well as targeted an American-Jewish audience.

62.     Defendant discriminated against Plaintiff based on her gender and race when she was routinely passed over in favor of male, white colleagues for the stories that she originated, which resulted in diminished work and advancement opportunities.

63.     Interviews and reports that Plaintiff delivered to Defendant i24News – using her own contacts – were consistently reassigned to Jewish colleagues who had not done the work, who did not have those contacts nor the relevant experience.

64.     While contracted to perform on-air duties, Plaintiff was not given a clothing and make up allowance and not permitted to hire a make-up artist unlike her Jewish and American female colleagues. Other on-air talent had clothing and make up allowances, including up to $14,000 per year for make up only.

65.     One of her Jewish male colleagues had exclusive use of the DC bureau company vehicle, which he routinely used privately and parked at his house.

66.     A series of exclusive interviews with the Muslim community in Minnesota were reassigned to a Jewish white male reporter at the direction of defendant Wheelock.

67.     An exclusive report on the first "Palestinian Museum in the US" was reassigned to a Jewish Israeli reporter who had no contacts with the Palestinian diaspora in the U.S. and held political views incompatible with fair coverage of such story.

68.     Plaintiff was also passed over for promotions and raises in contrast with male colleagues, some of whom received three consecutive and considerable raises in less than a year and a half.

69.     During a March 2017 meeting, Defendant Melloul, on behalf of Defendants Altice and i24 News, made a point of remarking that part of the reason Plaintiff was hired and so "effective" in her job was that "she is good looking." Defendant Melloul made this statement in front of a senior female correspondent and a female i24 News/Altice USA HR manager.

70.     Defendants fostered and purveyed a culture of male privilege where women must work harder for less and with no chance of advancement. For example, while Plaintiff was on a two-month assignment in Israel to manage the daily news desk for over 300 people at the request of Defendants, she was directed to sleep in her former manager's bed while he was away in order to save company expenses. On Wheelock's return to his one-bedroom apartment, Plaintiff was berated for choosing to pay for her own accommodation for the remainder of her assignment in Israel when no other arrangement had been made for her.

71.     Defendants routinely provided hotel accommodations to male, white, and Jewish employees when visiting and working in Israel - per the Defendants' travel and entertainment policy handbook. For example, a white male correspondent was authorized to travel to many countries in business and first-class and was even bought extra tickets any time he missed flights due to personal reasons.

72.     Furthermore, during Plaintiff's assignment in Tel Aviv, her manager Defendant Wheelock added to her personal discomfort by discussing his personal life with his wife in a social setting after work hours.

73.     Defendants routinely refused to offer enough personnel and financial support to conduct Plaintiff's contracted projects as well as other resources, while providing the required support to male, white, and Jewish employees who performed identical duties. For example, while

Defendants benefited from Plaintiff's work and reporting, they refused to pay for reasonable expenses such as travel, lodging, and meals.

74.     When white male correspondents of Defendants, in the same or similar positions as Plaintiff, travelled nationally and internationally to report on stories, they all obtained assistance and reimbursement for such travel, including private and safe accommodations - per Defendants' travel and entertainment policy handbook.

75.     Defendants also made discriminatory comments regarding Plaintiff's national origin, religion, and immigration status.

76.     Defendant Wheelock discussed Plaintiff's private immigration information with a company employee, thereafter this employee expressly alleged an absolute falsehood that Plaintiff was illegally present in the United State and about to be deported.  The employee also discussed Plaintiff's immigration status with two cameramen that she was managing at the time.  Defendants were aware of that incident but chose not to investigate or take action.

77.     Defendants continuously engaged in discriminatory employment practices, treated Plaintiff differently based on her gender, race, religion, and national origin, and held Plaintiff to different standards than other white, male, American, and Jewish employees.

78.     In late 2018, when Defendants' bought Cheddar (a news network with a predominant millennial audience), other employees were given additional opportunities to work for the new merged news network, but Plaintiff was denied the opportunity to report on-air even though her 2019 employment contract stipulates that she would perform on-air correspondent duties in addition to her established work as Washington, D.C. editor-in-chief.

79.     Defendant Wheelock told Plaintiff to "stop volunteering" for on-air positions ensuring that a Jewish female reporter with no Washington, D.C. experience was used on air in

Plaintiff's place.  Defendants Wheelock and Melloul also gave prime time anchoring roles to the same reporter – who had no prior anchoring experience and who did not have to interview or apply to the anchoring position.

80.     Defendants Wheelock and Melloul also gave anchoring roles to a female Israeli freelancer who had no prior journalistic experience in the United States.

81.     When a full-time position as Washington, D.C. correspondent became vacant in January 2019, managers ignored Plaintiff's requests for on-air positions and chose instead to assign a Jewish female reporter with less experience and a Jewish male reporter with only print media experience who had never been on camera before.

82.     Defendants denied Plaintiff the opportunity to apply or interview for a correspondent position in Washington D.C. despite her having the proven experience and qualifications for it

83.     Instead, Defendants chose to relocate a New York-based Jewish and Israeli-American reporter with no significant professional experience, absolutely no politics or presidential campaign coverage experience, and no Washington D.C. contacts – in stark contrast to Plaintiff's qualifications and experience.

84.     The Jewish individual that Defendants chose was not required to interview for the position or to show professional experience.

85.     After Defendants chose this Jewish individual, they asked Plaintiff to manage the new correspondent and to "show her the ropes."  Defendants immediately reassigned a prestigious interview Plaintiff was due to conduct with the Secretary of State's spokesperson to that same Jewish individual who had never reported from the U.S. State Department and had absolutely no diplomatic reporting experience.

86.     Despite having no Washington, D.C. or any substantial journalistic experience, this individual's image was promoted extensively by Defendants i24News and Altice USA marketing and public relations department on the company website and in prestigious national publications like "Politico."

87.     After Defendants promised in writing that they would support Plaintiff's H-1B visa[1], Defendants failed to support her petition and instead terminated Plaintiff.  Defendants then lied to Plaintiff telling her that they had sent her application but never received a receipt notice for it.

88.     Plaintiff was unable to verify the information and lived in fear of having been embroiled in an immigration fraud scheme.

89.     Defendant Berry, on behalf of Defendant Altice USA, threatened to terminate the 2019 employment agreement when Plaintiff wanted to hire her own counsel to process her visa application.

90.     Defendant Berry also conveyed to Plaintiff that Altice USA allegedly filed an H-1B visa application on her behalf, prevented Plaintiff from speaking with the law firm allegedly handling the application, refused to allow Plaintiff to view the application, and then falsely stated that Altice USA did not receive a receipt number for the application because Plaintiff's case had not been selected a visa lottery.

91.     However, Defendants Berry, Altice USA, and i24 News supported the petitions of two other immigrant workers in the US: one French white female and one Israeli citizen of Jewish

---

[1] A working visa in the USA generally available to professionals and having a 3-year validity period.

faith, none of whom have a master's degree from an accredited U.S. university[2] or previous journalistic experience in the U.S. as is the case for Plaintiff.

92.     Thus, Defendants' termination decision was also premised on Plaintiff's national origin and immigration status.

93.     Defendants had a complete disregard of Plaintiff's immigration status at the time and of her life in the United States.  For example, while Plaintiff was in Israel, Defendant Mr. Melloul and Mr. Wheelock held an improvised meeting in Mr. Melloul's office in which they tried to pressure Plaintiff into moving to Tel Aviv, Israel, in order to manage the news desk there on a permanent basis.

94.     Prior to starting her employment, Defendants Wheelock and Melloul were informed and aware of Plaintiff's immigration status.  Plaintiff communicated – including in writing – about the H-1B sponsorship, which Defendants had committed to, but Defendants chose to ignore discussions about honoring their prior commitments.

95.     Defendants pressured Plaintiff by saying that her "immigration problem" would be solved if she accepted to work a year in Israel.

96.     Plaintiff voiced her concerns and reported the discriminatory comments and actions to Defendants and informed them of the discriminatory treatment premised on her gender, national origin, religion, and immigration status.

97.     In response to Plaintiff's complaints, Defendants terminated her employment, which constitutes retaliation under Title VII, NYSHRL, and NYCHRL.

98.     Furthermore, when Plaintiff complained about the discriminatory treatment, Defendants Altice and i24 News via Defendant Wheelock directed Plaintiff to "stay quiet."

---

[2] Per US Immigration law, this qualification leads to an increased chance of a successful H-1B application over individuals without a US Master's degree.

99.     Instead of investigating the allegations of discrimination, as required by applicable laws, Defendants retaliated against Plaintiff by terminating her employment.

100.    At the time of her termination, Plaintiff was highly qualified for her position, and Defendants replaced her with the American colleague who she had hired and managed, and who had discussed Plaintiff's immigration status with Plaintiff's colleagues falsely alleging Plaintiff's illegal work status. That colleague who had only two years of experience in broadcast television also had no managing or on-air experience and did not have to interview for the job

101.    At the time of her termination, despite having the qualifications, Plaintiff was denied the opportunity to interview for other open positions that were available.

102.    After being terminated, Defendant Wheelock told Plaintiff that had her immigration status been "less complicated", she would still have her job.

103.    As a result of her termination, Plaintiff was also denied the significant career advancement opportunities of reporting on air throughout the 2020 Presidential election campaign for Defendants and Cheddar news networks.

104.    Plaintiff was, and still is, distressed and suffering life altering consequences by the discrimination she suffered because of her gender, race, national origin, and religion.

## FIRST CAUSE OF ACTION
### (Improper Classification Under the FLSA)

105.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

106.    Plaintiff's employment was controlled and directed by Defendants, the services rendered by Plaintiff were an integral part of Defendants' business, and Defendants had direct control over the manner of Plaintiff's work.

107.     Plaintiff had been working for Defendants for almost three years and worked more than sixty (60) hours per week.  Defendants Wheelock and Melloul were fully aware of the hours the Plaintiff worked.

108.     For the entirety of her employment, Plaintiff's work schedule and hours were made by Defendants, and she was expected to be available during their set working hours. Plaintiff was expected to be available to i24News, Wheelock, Melloul, and Serrano 24 hours a day, seven days a week and was berated if she was not. Defendants relied on Plaintiff to create, manage, and develop material for the Washington, D.C. bureau, which was an integral part of Defendants' business.

109.     The economic realities of Plaintiff and Defendants' relationship are such that Plaintiff was dependent on Defendant for employment and Plaintiff served as the Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) and Correspondent for Defendants, of which Defendants were dependent on.

110.     Defendant paid Plaintiff as an independent contractor in order to avoid tax obligations, and payment of employee benefits under city, state, and federal laws.

111.     As a direct and proximate result of Defendants' unlawful conduct in violation of the FLSA, Plaintiff has suffered and continues to suffer severe economic damage, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an award of monetary damages, liquidated damages, attorney fees, and other relief.

## SECOND CAUSE OF ACTION
### (Improper Classification under the NYLL)

112.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

113.    Plaintiff's employment was controlled and directed by Defendants such that Plaintiff did not work at her own convenience.

114.    Plaintiff was not free to engage in other employment, and in fact her 2017 and 2018 employment contracts with Defendants prohibited her from servicing clients outside of Defendant i24 News.

115.    For the entirety of her employment, Plaintiff's work schedule and hours were made by Defendants, and she was expected to be available during their set working hours.

116.    Plaintiff's monthly income was a set amount, indicative of it being a salary even though she was required to submit monthly/weekly invoices.

117.    Defendant paid Plaintiff as an independent contractor in order to avoid tax obligations, and payment of employee benefits under city, state, and federal laws.

118.    As a direct and proximate result of Defendants' unlawful conduct in violation of the NYLL, Plaintiff has suffered and continues to suffer severe economic damage, mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, and physical illness and injury, for which she is entitled to an award of monetary damages, liquidated damages, attorney fees, and other relief.

## THIRD CAUSE OF ACTION
### (Discrimination in Violation of Title VII - Gender)

119.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

120.    Plaintiff, as a woman, belongs to a protected class within the meaning of Title VII.

121.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

122.    Defendants discriminated against Plaintiff on the basis of her gender by, inter alia, terminating Plaintiff's employment due to her gender, which constitutes an adverse employment action under Title VII.

123.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

124.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

125.    Defendants' unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### (Discrimination in Violation of the Title VII – Race/Color)

126.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

127.    Plaintiff, as a person of color, belongs to a protected class within the meaning of Title VII.

128.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

129.    Defendants discriminated against Plaintiff on the basis of her race/color by, inter alia, terminating Plaintiff's employment due to her race/color, which constitutes an adverse employment action under Title VII.

130.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages including attorney fees.

131.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

132.    Defendants' unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**(Discrimination in Violation of the Title VII – National Origin)**

133.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

134.    Plaintiff, as a person of Saudi Arabian national origin, belongs to a protected class within the meaning of Title VII.

135.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

136.    Defendants discriminated against Plaintiff on the basis of her race/color by, inter alia, terminating Plaintiff's employment due to her race/color, which constitutes as an adverse employment action under Title VII.

137.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages including attorney fees.

138.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

139.    Defendants' unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### SIXTH CAUSE OF ACTION
#### (Discrimination in Violation of the Title VII - Religion)

140.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

141.    Plaintiff, as a person of Muslim faith, belongs to a protected class within the meaning of Title VII.

142.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

143.    Defendants discriminated against Plaintiff on the basis of her religion by, inter alia, terminating Plaintiff's employment due to her religion, which constitutes as an adverse employment action under Title VII.As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages including attorney fees.

144.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

22

145.    Defendants' unlawful and discriminatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### SEVENTH CAUSE OF ACTION
**(Retaliation in Violation of Title VII - Gender)**

146.    Plaintiffs hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

147.    Plaintiff participated in a protected activity, namely, reporting the gender discrimination against her to her manager and the HR department of Defendants.

148.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under Title VII, because of her prior protected activities.

149.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

150.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief including attorney fees.

151.    Defendants' unlawful and retaliatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## EIGHTH CAUSE OF ACTION
**(Retaliation in Violation of Title VII – Race/Color)**

152.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

153.    Plaintiff participated in a protected activity, namely, reporting the race/color discrimination against her to her manager and the HR department of Defendants.

154.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under Title VII, because of her prior protected activities.

155.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

156.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief including attorney fees.

157.    Defendants' unlawful and retaliatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## NINTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII – National Origin)

158.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

159.    Plaintiff participated in a protected activity, namely, reporting the national origin discrimination against her to her manager and the HR department of Defendants.

160.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under Title VII, because of her prior protected activities.

161.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

162.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief including attorney fees.

163.    Defendants' unlawful and retaliatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TENTH CAUSE OF ACTION
### (Retaliation in Violation of Title VII - Religion)

164.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

165.    Plaintiff participated in a protected activity, namely, reporting the religious discrimination against her to her manager and the HR department of Defendants.

166.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under Title VII, because of her prior protected activities.

167.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

168.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of Title VII, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief including attorney fees.

169.    Defendants' unlawful and retaliatory conduct in violation of Title VII was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## ELEVENTH CAUSE OF ACTION
### (Discrimination in Violation of § 1981)

170.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

171.    Under § 1981, all persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts and to the full equal benefit of all laws as is enjoyed by white citizens.

172.    The term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including an employment one.

173.    Plaintiff, as an Arab person of color, is a member of a racial minority within the meaning of § 1981.

174.    Defendants intentionally discriminated against Plaintiff on the basis of her race/color by, inter alia, terminating Plaintiff's employment due to her race/color and due to her complaints of discrimination.

175.    Defendants' intentional discrimination against Plaintiff concerned one or more activities enumerated in the statute, namely, the contractual employment relationship between them.

176.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of § 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

177.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of § 1981, Plaintiff has suffered and continues to suffer severe mental anguish

and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief including attorney fees.

178.   Defendants' unlawful and discriminatory conduct in violation of § 1981 was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWELFTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL - Gender)

179.   Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

180.   Plaintiff, as woman, belongs to a protected class within the meaning of NYSHRL.

181.   Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

182.   Defendants discriminated against Plaintiff on the basis of her gender by, inter alia, terminating Plaintiff's employment due to her gender which constitutes as an adverse employment action under NYSHRL.

183.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

184.   As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

185.    Defendants' unlawful and discriminatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## THIRTEENTH CAUSE OF ACTION
### (Discrimination in Violation of the NYSHRL – Race/Color)

186.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

187.    Plaintiff, as a person of color, belongs to a protected class within the meaning of NYSHRL.

188.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

189.    Defendants discriminated against Plaintiff on the basis of her race/color by, inter alia, terminating Plaintiff's employment due to her race/color, which constitutes as an adverse employment action under NYSHRL.

190.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

191.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

192.    Defendants' unlawful and discriminatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**FOURTEENTH CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL – National Origin)**

193.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

194.    Plaintiff, as a person of Saudi Arabian decent, belongs to a protected class within the meaning of NYSHRL.

195.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

196.    Defendants discriminated against Plaintiff on the basis of her national origin by, inter alia, terminating Plaintiff's employment due to her national origin, which constitutes as an adverse employment action under NYSHRL.

197.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

198.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

199.    Defendants' unlawful and discriminatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### FIFTEENTH CAUSE OF ACTION
**(Discrimination in Violation of the NYSHRL - Religion)**

200.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

201.    Plaintiff, as a person of Muslim faith, belongs to a protected class within the meaning of NYSHRL.

202.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

203.    Defendants discriminated against Plaintiff on the basis of her religion by, inter alia, terminating Plaintiff's employment due to her religion, which constitutes as an adverse employment action under NYSHRL.

204.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

205.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation,

embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

206.    Defendants' unlawful and discriminatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

### SIXTEENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL - Gender)

207.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

208.    Plaintiff participated in a protected activity, namely, reporting the gender discrimination against her to her manager and the HR department of Defendants.

209.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYSHRL, because of her prior protected activities.

210.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

211.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

212.     Defendants' unlawful and retaliatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## SEVENTEENTH CAUSE OF ACTION
**(Retaliation in Violation of the NYSHRL – Race/Color)**

213.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

214.     Plaintiff participated in a protected activity, namely, reporting the race/color discrimination against her to her manager and the HR department of Defendants.

215.     Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYSHRL, because of her prior protected activities.

216.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

217.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

218.     Defendants' unlawful and retaliatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

33

## EIGHTEENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL – National Origin)

219.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

220.    Plaintiff participated in a protected activity, namely, reporting the national origin discrimination against her to her manager and the HR department of Defendants.

221.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYSHRL, because of her prior protected activities.

222.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

223.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

224.    Defendants' unlawful and retaliatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## NINTEENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL - Religion)

225.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

226.     Plaintiff participated in a protected activity, namely, reporting the religious discrimination against her to her manager and the HR department of Defendants.

227.     Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYSHRL, because of her prior protected activities.

228.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

229.     As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYSHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

230.     Defendants' unlawful and retaliatory conduct in violation of NYSHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWENTIETH CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL - Gender)

231.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

232.    Plaintiff, as woman, belongs to a protected class within the meaning of NYCHRL.

233.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

234.    Defendants discriminated against Plaintiff on the basis of her gender by, inter alia, terminating Plaintiff's employment due to her gender which constitutes as an adverse employment action under NYCHRL.

235.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

236.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

237.    Defendants' unlawful and discriminatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWENTY-FIRST CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL – Race/Color)

238.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

239.    Plaintiff, as a person of color, belongs to a protected class within the meaning of NYCHRL.

240.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

241.    Defendants discriminated against Plaintiff on the basis of her race/color by, inter alia, terminating Plaintiff's employment due to her race/color, which constitutes as an adverse employment action under NYCHRL.

242.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

243.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

244.    Defendants' unlawful and discriminatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWENTY-SECOND CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL – National Origin)

245.     Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

246.     Plaintiff, as a person of Saudi Arabian decent, belongs to a protected class within the meaning of NYCHRL.

247.     Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

248.     Defendants discriminated against Plaintiff on the basis of her national origin by, inter alia, terminating Plaintiff's employment due to her national origin, which constitutes as an adverse employment action under NYCHRL.

249.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

250.     As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

251.     Defendants' unlawful and discriminatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

38

## TWENTY-THIRD CAUSE OF ACTION
### (Discrimination in Violation of the NYCHRL - Religion)

252.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

253.    Plaintiff, as a person of Muslim faith, belongs to a protected class within the meaning of NYCHRL.

254.    Plaintiff was qualified for her position as Washington, D.C. Editor-in-Chief (manager of the D.C. bureau) based on her academic and professional credentials and experience in the news reporting industry.

255.    Defendants discriminated against Plaintiff on the basis of her religion by, inter alia, terminating Plaintiff's employment due to her religion, which constitutes as an adverse employment action under NYCHRL.

256.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including but not limited to loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages.

257.    As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

258.    Defendants' unlawful and discriminatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWENTY-FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL - Gender)

259.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

260.    Plaintiff participated in a protected activity, namely, reporting the gender discrimination against her to her manager and the HR department of Defendants.

261.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYCHRL, because of her prior protected activities.

262.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

263.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

264.    Defendants' unlawful and retaliatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWENTY-FIFTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL – Race/Color)

265.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

266.    Plaintiff participated in a protected activity, namely, reporting the race/color discrimination against her to her manager and the HR department of Defendants.

267.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYCHRL, because of her prior protected activities.

268.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

269.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

270.    Defendants' unlawful and retaliatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWENTY-SIXTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL – National Origin)

271. Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

272. Plaintiff participated in a protected activity, namely, reporting the national origin discrimination against her to her manager and the HR department of Defendants.

273. Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYCHRL, because of her prior protected activities.

274. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

275. As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

276. Defendants' unlawful and retaliatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## TWENTY-SEVENTH CAUSE OF ACTION
### (Retaliation in Violation of the NYCHRL - Religion)

277.    Plaintiff hereby repeats and realleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

278.    Plaintiff participated in a protected activity, namely, reporting the religious discrimination against her to her manager and the HR department of Defendants.

279.    Defendants unlawfully retaliated against Plaintiff by terminating her employment, which constitutes as an adverse employment action under NYCHRL, because of her prior protected activities.

280.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which she is entitled to an award of monetary damages and other relief.

281.    As a direct and proximate result of Defendants' unlawful and retaliatory conduct in violation of NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

282.    Defendants' unlawful and retaliatory conduct in violation of NYCHRL was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

43

A.      A declaratory judgment that the actions, conduct, and practices of Defendants complained of herein violate the FLSA, NYLL, Title VII, § 1981, NYSHRL, and NYCHRL;

B.      An order directing Defendant to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and/or otherwise unlawful conduct, as well as to take such affirmative action, including reinstatement, as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff;

C.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to the loss of pass and future income, wages, compensation, job security and other benefits of employment;

D.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem self-confidence and personal dignity, emotional pain and suffering and any other physical or mental injuries;

E.      An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

F.      An award of liquidated damages, pursuant to the FLSA and NYLL;

G.      An award of punitive damages, pursuant to Title VII, § 1981, NYSHRL, and NYCHRL in an amount to be determined at trial;

H.      An award of damages for any and all other monetary and/or non-monetary damages losses suffered by Plaintiff an amount to be determined at trial, plus prejudgment interest;

44

I.       An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's

reasonable attorneys' fees and costs to the fullest extent permitted by laws; and

J.       Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.


Dated: October 7, 2020
      New York, New York                  Respectfully submitted,

                                      DANNY GRACE, P.C.
                                      *ATTORNEYS FOR PLAINTIFF*

                                      222 BROADWAY, 19TH FLOOR
                                      NEW YORK, NY 10038
                                      (646) 515-2821


                                  _____/s/_____
                                    DANIEL GRACE, ESQ.

45